**Mary Ann CHURCHILL and Stephen T. Churchill, Appellants,**

v.

**Marian Wardene CHURCHILL, Appellee.**

**No. 2–88–219–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 16, 1989.

Rehearing Denied Dec. 15, 1989.

**914**

Stites, Hoover, Clark & Smith, and Robert T. Stites, Fort Worth, for appellants.

Cantey & Hanger, and David C. Bakutis, Fort Worth, for appellee.

Before HILL, FARRIS and MEYERS, JJ.

## OPINION

HILL, Justice.

Mary Ann Churchill and Stephen T. Churchill, coexecutors of the estate of Richard Churchill, deceased, appeal from the granting of an application for family allowance filed by Marian Wardene Churchill, the deceased's surviving widow. In four points of error, the appellants contend that the trial court erred in granting the application for family allowance because: (1) a surviving spouse is not entitled to the allowance when adequate provision has been made for her by will; (2) Marian was put to an election between taking under the provisions of the will or taking her share of community and statutory benefits, so that taking under the will precluded her from claiming a family allowance; (3) a family allowance is disallowed by statute when a surviving spouse has adequate separate property to provide for her maintenance; and (4) there was no evidence or insufficient evidence to determine whether Marian's separate property at the time of Richard's death was inadequate to provide for her maintenance. In addition, appellants contend in a fifth point of error that the amount of the allowance was excessive based on the circumstances existing at the time of Richard's death and those anticipated to exist during the first year following his death.

We affirm, because we find that: (1) Marian was entitled to an allowance and was not put to an election between an allowance or taking under the will, because if Richard intended to exclude her from such rights it does not appear from the terms of the will, either expressly or by "manifest implication;" (2) the evidence is legally and factually sufficient to show that Marian's separate property was inadequate for her maintenance; and (3) the evidence is legally and factually sufficient to support the award of a surviving spouse allowance in the amount of $30,000.

The appellants contend in points of error numbers one and two that the trial court erred in awarding Marian a family allowance, because a surviving spouse is not entitled to the allowance when adequate provision has been made for her by the will, and that Marian was therefore put to an election between taking under the will or taking her share of community and statutory benefits.

■ The trial court, after hearing evidence, awarded Marian a family allowance, in accordance with section 286 of the Probate Code, in the amount of $30,000. No findings of fact or conclusions of law were filed.

The widow cannot be excluded from her statutory rights unless the testator's intention to exclude her from the enjoyment of the rights asserted appears from the terms of the will either expressly or by "manifest implication." *Miller v. Miller,* 149 Tex. 543, 235 S.W.2d 624, 627 (1951). Because the will does not expressly state an intention to deny Marian her statutory rights, we must determine if such an intention appears by "manifest implication."

In his will, Richard made specific monetary bequests to his grandchildren, stepgrandchildren, and stepdaughter in the total amount of $13,500. Marian, his surviving widow, was to receive the couple's automobile, a life estate in their residence

and its furnishings, a life estate in their country club membership, three insurance policies of $40,000 total face value, the use and benefit of any IRA's (Individual Retirement Accounts) during her lifetime, and any interest in her teacher retirement and deferred investment program in connection with her employment. Finally, Richard's children were to receive certain specified items of personal property, the accounts and proceeds from the sale of Richard's law office, certain interests in real estate, and the rest and residue of the estate, including certain specifically described savings accounts. The will provided that the coexecutors were to deal with a tract of real property located in Richland Hills in accordance with instructions given to them by the testator, apparently given prior to the execution of the will. The estate apparently has a claim pending against other parties in connection with this property. The record does not reflect what the testator's instructions were in connection with the Richland Hills property. In their inventory, appraisement, and list of claims, the coexecutors value this property at $60,500.

We find that an intention that Marian be denied her statutory rights does not appear by manifest implication. Since the record does not reflect the instructions given by the testator in connection with the Richland Hills property, and since that property is apparently adequate to satisfy the statutory allowance, for all we know the testator's instructions could have been that the coexecutors use the property to satisfy any award of statutory allowance. Although those may not have been the testator's instructions, the fact that they could have been prevent us from finding that the terms of the will preclude Marian's statutory rights by manifest implication.

The appellants' contention that Marian was put to an election is based upon the premise that her taking of the allowance is inconsistent with, or would disappoint, the will. For the reason stated above, we are unable to find that the awarding of a statutory allowance to Marian is inconsistent with or that it would disappoint the will.

The appellants rely on *Trousdale v. Trousdale's Executors*, 35 Tex. 756 (1872) to support their contention that a surviving spouse is not entitled to the statutory allowance where adequate provision has been made for the spouse by a will. In *Trousdale*, the surviving spouse received a life estate in the homestead and its furnishings, a wagon and horses, twenty head of cattle, sheep, hogs, and $400 cash. This property represented all of the property except that which was specifically bequeathed to others. The Supreme Court found that from the will it clearly appeared that the testator himself intended to provide, during his lifetime, for the immediate wants of his widow after his death.

We do not find *Trousdale* necessarily inconsistent with *Miller*. The fact that the widow in *Trousdale* received everything except that which was specifically bequeathed to others shows the testator's intent to exclude her statutory rights by manifest implication, since any award to her would have come from property specifically bequeathed to others such a result would have been inconsistent with the will and would have "disappointed" the will. We believe that this inconsistency is what made it clear that the testator intended that the surviving spouse should not also have a statutory allowance. Although we note that the opinion is an opinion of the infamous "semi-colon" court of the Reconstruction era, we do not fail to give it precedential value because of that fact. *See* Paulsen and Hambleton, *Confederates and Carpetbaggers: The Precedential Value of Decisions from the Civil War and Reconstruction Era*, 51 Tex.B.J. 916, 919–20 (Oct. 1988).

We overrule points of error numbers one and two.

The appellants urge in points of error numbers three and four that the trial court erred in granting Marian's application for family allowance because such an allowance is disallowed by statute when a surviving spouse has adequate separate property to provide for her maintenance, and because there was no evidence, or insufficient evidence, to determine whether Ma-

rian's separate property existing at the time of her husband's death was inadequate to provide for her maintenance.

The family allowance provided for by TEX.PROB.CODE ANN. sec. 286 (Vernon 1980) is to be made in consideration of the whole condition of the estate during the first year after the spouse's death, and to the necessities of the surviving spouse and the circumstances to which he or she has been accustomed. *Pace v. Eoff,* 48 S.W.2d 956, 960 (Tex.Comm.App.1932, op. adopted); *Kennedy v. Draper,* 575 S.W.2d 627 (Tex.Civ.App.–Waco 1978, no writ); *Ward v. Braun,* 417 S.W.2d 888, 893 (Tex. Civ.App.—Corpus Christi 1967, no writ).

■ TEX.PROB.CODE ANN. sec. 288 (Vernon 1980) provides that the court is not to make an allowance for the surviving spouse when the survivor has separate property adequate to his or her maintenance. Construing this section together with section 286 and the decisions which have analyzed section 288, we find that the surviving spouse must demonstrate, as part of the showing of the necessity of the allowance, that he or she does not have separate property adequate to his or her support during the first year after the spouse's death.

■ Testimony before the trial court showed that Marian's separate property at the time of Richard's death consisted of certain jewelry, and a residence with a tax-appraisal value of $51,000 and a fair rental value of $300 per month. Presumably, the jewelry was not an income-producing property. Marian testified that she had monthly expenses of $2,846.78, or $34,161.36 per year, and that she was accustomed to spending an additional $1,500–$2,000 per month, or $18,000–$24,000 per year on golf tournaments with her husband. We find that the evidence is legally and factually sufficient to show that Marian's separate property was not adequate to her maintenance.

The appellants rely on the fact that after Richard's death, Marian gave her separate property residence to her daughter. We do not consider the fact that Marian gave away the property to be controlling be-cause it was not adequate for her maintenance after Richard's death, even if she had kept it. We overrule points of error numbers three and four.

Appellants assert in point of error number five that the amount of the family allowance is excessive because of sources of income available to Marian, and because Marian testified that she did not have to borrow any money during the nearly eleven months from the time of Richard's death until the date of the hearing.

■ Richard died on August 30, 1987, and the hearing on the family allowance was held on August 2, 1988. The evidence at the hearing established that Marian received retirement benefits from the Fort Worth Independent School District during this time period in the amount of $1,106.68 per month, or $13,280.16 per year. We have already noted testimony concerning the separate property residence with a fair rental value of $300 per month, or $3,600 per year. If those two sources of income are subtracted from the total amount that Marian testified was necessary for her maintenance, an amount remains that greatly exceeds the family allowance awarded by the court. Accordingly, we find that consideration of those sources of income does not lead to the conclusion that the amount of allowance awarded by the court is excessive.

■ The appellants also rely on Marian's testimony that she did not borrow any money from the time of Richard's death until the date of hearing to show that the award of $30,000 is excessive. As we have noted, the testimony showed maintenance expenses greatly in excess of $30,000, even if credit is given to the appellants for Marian's retirement income and income from the separate residence that she had given to her daughter. However, at this hearing, which was not held until nearly eleven months after Richard's death, Marian testified that she did not borrow any money during that time to meet her monthly expenses, although she did acknowledge receiving approximately $600–$700 from her daughter to help with her needs.

The testimony taken did not show whether Marian did not need to borrow money during the time since Richard's death because her income was sufficient to meet her needs or whether she possibly used community resources or gifts from others besides her daughter in order to make ends meet. Given the testimony showing Marian's need for maintenance greatly in excess of her income and the uncertainty of the testimony with respect to the appellants' assertion that Marian's income was nearly sufficient to meet her monthly expenses, we are unable to conclude, as urged by the appellants, that the allowance in the amount of $30,000 is excessive.

The appellants rely on the statement in *Noble v. Noble,* 636 S.W.2d 551, 553 (Tex. App.—San Antonio 1982, no writ), that "... the purpose of providing an allowance for the surviving spouse is to furnish a remedy in those cases where the survivor is left without any financial support during the year following the death of a spouse." It would be more accurate to say that the purpose of providing an allowance for the surviving spouse is to furnish a remedy in those cases where the survivor is left without adequate support during the year following the death of a spouse. To deny an allowance where the surviving spouse had some financial support, which was inadequate, would be inconsistent with the rule that the court is to consider the whole condition of the estate. We therefore find that the evidence is legally and factually sufficient to support the allowance in the amount of $30,000. We overrule point of error number five.

The order awarding Marian Churchill a surviving spouse allowance in the amount of $30,000 is affirmed.

MEYERS, Justice, dissenting.

I respectfully dissent from the majority holding in point of error number three. Appellants urge that the trial court erred in granting Marian Churchill's application for family allowance because such an allowance is disallowed by statute when a surviving spouse has adequate separate property to provide for her maintenance, and because there was no evidence, or insufficient evidence, to determine whether Marian's separate property existing at the time of her husband's death was inadequate to provide for her maintenance. The majority holds the evidence is legally and factually sufficient to show appellee's separate property was inadequate for her maintenance.

It is my opinion that the probate court abused its discretion by granting the family allowance to Marian after she gave away her separate property following her husband's death. In the interest of justice and fair play, appellee should not be allowed to bolster her widow's allowance by being permitted to give away property that could have contributed to her support and maintenance. The property had a tax-appraisal value of $51,000 at the time of Richard Churchill's death. If sold, this income might have reduced the family allowance taken from the estate of her deceased husband.

As the majority points out, section 288 of the Texas Probate Code provides that the court is not to make an allowance for the surviving spouse when the survivor has separate property adequate for his or her maintenance. Additionally, if appellee did not want the benefit and use of this property, it should have been sold. Accordingly, I dissent to the court's ruling on point of error three.